

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN RE: PUBLICACIONES E. IMPRESOS DEL NORTE, S. DE R.L. DE C.V., PUBLICACIONES PASO DEL NORTE, S.A. DE C.V., AND PASO DEL NORTE PUBLISHING, INC. Relators. | § § § § § | No. 08-22-00099-CV AN ORIGINAL PROCEEDING IN MANDAMUS |

**O P I N I O N**

This mandamus proceeding arises from a trial court's denial of a motion to dismiss for forum non conveniens.[1] The underlying case involves Javier Corral Jurado's lawsuit against Relators, Publicaciones E. Impresos Paso del Norte, S. de R.L. de C.V. (El Diario de Juarez), Paso del Norte Publishing, Inc. (El Diario de El Paso), and Publicaciones Paso del Norte, S.A. de C.V. (Diario Digital). Corral sued for defamation, libel, and slander arising from the publication in El Paso County of several online and print newspaper articles related to his property and accusing him of criminal acts. El Diario de Juarez and Diario Digital filed a motion to dismiss for forum

---

[1] This proceeding is related to an interlocutory appeal also filed in this Court, case number 08-22-00044-CV, which involves the trial court's denial of special appearances. The cases share the same factual and procedural background, as well as the same clerk's record.

non conveniens, which the trial court denied.[2] For the following reasons, we affirm.

*Factual and Procedural Background*

Corral served as Governor of the State of Chihuahua, Mexico from 2016 through 2021. His suit alleged the defendants initiated a campaign to defame, slander, and injure his reputation after his administration refused an attempted extortion in exchange for publicity by Osvaldo Rodriguez Borunda, an owner and director of the defendant companies. Corral claims beginning in September 2019, Relators published a series of online and print articles falsely accusing him of allegedly "invading" the property next to his home, claiming he did not legally purchase the property, and stating purportedly official documents revealed he did not in fact own the property. In response, Corral states he appeared on television to explain how he purchased the property legally, disclosing the sellers' identity and the purchase contract. However, he contends the Relators disregarded this information and continued publishing articles accusing him of misdeeds surrounding the property's purchase and renovation. Before filing his lawsuit, Corral attempted to resolve the issues with the Relators through the Texas Defamation Mitigation Act, *see* Texas Civil Practice and Remedies Code Chapter 73, but the Relators refused to correct, clarify, or retract their publications and instead continued to publish articles about the property.

Corral contends he filed suit in Texas state court because: (1) he has no other available or adequate forum; (2) the purportedly defamatory articles were published in El Paso County; and (3) the court can exercise personal jurisdiction over all Relators. He further contends these publications subjected him to "public hatred, low approval ratings, contempt, ridicule, pecuniary injury, and actual damages," and damaged his reputation in the regional community of El Paso, in

---

[2] El Diario de El Paso did not join the motion to dismiss for forum non conveniens.

which El Diario de El Paso and El Diario de Juarez have a circulation of over 20,000.

Among other things, El Diario de Juarez and Diario Digital filed a motion to dismiss for forum non conveniens. They contend Corral should have filed this suit in Mexico and is "forum shopping" by bringing the case in El Paso. Beyond the jurisdictional arguments more fully developed in their special appearances, El Diario de Juarez and Diario Digital argue Mexico is an available and adequate alternative forum and relevant private- and public-interest factors favor dismissal of the Texas state court case. Corral responded, and the trial court held a hearing on the motion, which it later denied. It issued seventy-one findings of fact and eleven conclusions of law consistent with its ruling,[3] finding in part:

- El Diario de Juarez and Diario Digital did not demonstrate Mexico (and more specifically, the State of Chihuahua) is an available and adequate forum to hear this case.

- The State of Chihuahua, Mexico no longer recognizes a per se cause of action for defamation, libel, and slander. Though Chihuahua does permit a party to sue for *daño moral* (i.e., moral damages), the statute does not expressly reference defamation, libel, or slander, and it has a two-year statute-of-limitations, which would bar Corral's claims in this case.

- Even if the State of Chihuahua were an available and adequate alternative forum, the relevant private- and public-interests weigh against dismissal of this case.

Relators filed a petition for writ of mandamus, and Corral, the real party in interest, filed a brief in response.[4]

---

[3] Relators do not lodge factual- or legal-sufficiency challenges to the trial court's findings of fact in this proceeding. The trial court also incorporated all findings of fact entered in connection with the court's denial of El Diario de Juarez and Diario Digital's special appearances. Those findings—and El Diario de Juarez and Diario Digital's factual- and legal-sufficiency challenges to them—are discussed in that interlocutory appeal, case number 08-22-00044-CV.

[4] El Diario de Juarez and Diario Digital filed special appearances, which the trial court denied and are more fully detailed in the related interlocutory appeal before this Court, case number 08-22-00044-CV.

### *Standard of Review*

A trial court's denial of a motion to dismiss for forum non conveniens is reviewable by mandamus. *In re Mahindra, USA Inc.*, 549 S.W.3d 541, 545 (Tex. 2018). We will not disturb the trial court's judgment unless its decision constitutes a clear abuse of discretion. *Id.* A trial court abuses its discretion when it acts without reference to any guiding rules or principles and when there is no evidence to support its ruling. *Quixtar Inc. v. Signature Mgmt. Team, LLC*, 315 S.W.3d 28, 31 (Tex. 2010) (per curiam). However, a trial court has no discretion in determining what the law is or applying the law to the facts. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)).

At the appellate level, our duty is to review the trial court's decision-making process and its conclusion to determine whether it is reasonable; however, we are not to perform a de novo analysis or mechanically reweigh each of the forum non conveniens factors. *Vinmar Trade Fin., Ltd. v. Util. Trailers de Mexico, S.A. de C.V.*, 336 S.W.3d 664, 673 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Quixtar*, 315 S.W.3d at 35). Simply because a trial judge may decide a matter within her discretion differently than we would does not constitute an abuse of discretion. *Quixtar*, 315 S.W.3d at 31.

### *Applicable Law*

The doctrine of forum non conveniens applies when there are sufficient contacts between the defendant and forum state to confer personal jurisdiction, but "the case itself has no significant

---

Relators also filed a motion to determine choice of law, contending Mexican law applies to this case. Corral argued Texas law instead applies, and the trial court agreed. Though that decision is not before us, we consider choice-of-law in this case as a public-interest factor concerned with avoidance of unnecessary problems in conflict of laws or application of foreign law.

connection to the forum."[5] *In re Pirelli Tire, L.L.C.*, 247 S.W.3d 670, 675–76 (Tex. 2007). "The central focus of the forum non conveniens inquiry is convenience." *Quixtar*, 315 S.W.3d at 33 (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981)).

The Supreme Court has set forth the framework for analyzing forum non conveniens in an international context. *See Reyno*, 454 U.S. at 249; *see also Vinmar*, 336 S.W.3d at 672 (adopting the *Reyno* framework). First, the court determines whether an alternative forum exists. *Reyno*, 454 U.S. at 254-55 n.22 (1981). The court considers whether the defendant is amenable to process in the other jurisdiction as well as the availability of an adequate remedy. *Id.* Whether an alternative forum is adequate depends on "if the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *In re Pirelli Tire*, 247 S.W.3d at 678 (citation omitted). Second, if the court determines an alternative forum does exist, the court then considers certain private- and public-interest factors to determine which forum is best suited to the litigation. *Vinmar*, 336 S.W.3d at 672.[6] If the trial court has considered all the relevant private- and public-interest factors, and if its balancing of those factors is reasonable, "its decision deserves substantial deference." *Reyno*, 454 U.S. at 257. No "rigid rule" governs a trial court's discretion in forum non conveniens cases because each case turns on its facts. *Id.* at 249. Courts require neither an "extensive investigation" to produce evidence for a forum non conveniens dismissal hearing nor a "detailed quantification of costs." *Quixtar*, 315

---

[5] Because this case does not involve personal injury claims, we apply common law, not statutory, forum non conveniens analysis. *See Daniels v. State*, 538 S.W.3d 139, 147 (Tex. App.—El Paso 2017, pet. denied) (determining actions for dismissal under Texas statutory forum non conveniens are confined to claims of wrongful death or bodily injury, not other torts).

[6] If, however, the court determines there is no available and adequate alternative forum, it does not reach the second step. *See Diaz v. Todd*, 618 S.W.3d 798, 805 (Tex. App.—El Paso 2020, no pet.) ("There is of course nothing to balance if there is no alternative forum that is both adequate and available.").

S.W.3d at 34 (internal citations and quotations omitted).

A defendant seeking dismissal by forum non conveniens ordinarily "bears a heavy burden in opposing the plaintiff's chosen forum," though the doctrine "generally affords substantially less deference to a nonresident's forum choice." *Id.* at 31.[7] However, even a resident plaintiff's choice of forum is not dispositive, and "if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." *Reyno*, 454 U.S. at 255–56 n.23.

### *Analysis*

Relators raise five issues which can be generally restated as a contention the trial court abused its discretion by denying the motion to dismiss for forum non conveniens and determining Texas is the proper forum based on a balancing of the relevant private- and public-interest factors.[8]

With the applicable standard of review in mind, we consider the record to determine whether the trial court acted within its discretion when it determined the State of Chihuahua, Mexico does not provide an available and adequate alternative forum for Corral's claims, and the balance of the private- and public-interest factors weigh in favor of keeping the case in Texas state court.

### A. Availability and Adequacy of an Alternative Forum

Whether a Mexican court provides an available and adequate alternative forum for Corral's claims is a threshold question we must decide before considering the private- and public-interest

---

[7] Corral is not a Texas resident; therefore, the Relators' burden of proof is less stringent than it would be if he were. *See Quixtar*, 315 S.W.3d at 33.

[8] Specifically, Issues One, Two, and Three address whether the trial court abused its discretion in determining Texas is the proper forum. Issue Four attacks the trial court's determination of choice of law in this case, which we consider as a public-interest factor concerned with avoidance of unnecessary problems in conflict of laws or application of foreign law. Issue Five simply raises the mandamus standard of review and a Relator's burden.

factors. *Alvarez Gottwald v. Dominguez de Cano*, 568 S.W.3d 241, 249 (Tex. App.—El Paso 2019, no pet.). The trial court's relevant findings of fact are:

> . . . .

- #38 "El Diario de Juarez and Diario Digital have not demonstrated that the courts in the State of Chihuahua, Mexico are an available and adequate forum to hear this case. The State of Chihuahua, Mexico no longer recognizes a per se cause of action for defamation, libel, and slander."

- #39 "The State of Chihuahua allows an aggrieved party to sue for *daño moral* (i.e., moral damages) pursuant to Article 1801 of the Chihuahua Civil Code. The statute does not expressly reference defamation, libel, or slander. Assuming that this is a similar cause of action for defamation, libel, or slander in Mexico, the State of Chihuahua has a two-year statute of limitations for claims of *daño moral* pursuant to Article 1819 of the Chihuahua Civil Code."

- #40"El Diario de Juarez, El Diario de El Paso, and Diario Digital published the alleged defamatory articles and headlines in 2019—more than two years ago. Because the alleged defamatory publications are older than two years, Corral would be barred by the applicable statute of limitations to file suit in the State of Chihuahua under Mexican law."

- #41 "Pursuant to Article 55 of the Chihuahua Civil Procedure Code, any actions taken by a presiding judge who lacks competent jurisdiction are null and void. Thus, if a Mexican court lacks the ability to preside over a case, all actions taken by the court are null and void. Thus, the courts in Chihuahua are not an adequate or available forum to hear this case."

> . . . .

The trial court also entered a conclusion of law stating, "the State of Chihuahua, Mexico is not an available or adequate forum."

Relators contend Mexican courts provide an available and adequate alternative forum because Corral will not be deprived of all remedies or treated unfairly by a Mexican court. Further, Relators point to testimony at the hearing on the motion to dismiss from Manuel Aguirre Ochoa, the editorial director at El Diario de Juarez, that a Mexican newspaper can be sued for defamation. They also contend an article concerning human rights practices in Mexico, included as an exhibit

to Corral's response to the motion to dismiss, supports their assertion that Mexican law "provides for defamation moral damages with no cap." Finally, all defendants in the underlying case executed the following waivers and consents, which Relators contend nullify Corral's concerns about jurisdiction, limitations, and the discovery that has already taken place in Texas state court:

(1)     Paso Del Norte Publishing, Inc. [*i.e.*, El Diario de El Paso] consents to being sued in Ciudad Juarez, Chihuahua, Mexico by Plaintiff for the claims and causes of action raised in this lawsuit and does not and will not object to the jurisdiction of the Mexican courts over those claims.

(2)     All Defendants waive any limitations defense that may be available to them.

(3)     All Defendants agree and consent that all discovery and testimony taken in this case can be used in the Mexican courts.

(4)     Paso Del Norte Publishing, Inc. [*i.e.*, El Diario de El Paso] agrees and consents that it will make all of its officers, directors, editors, and journalists available to testify in the Mexican cause of action subject to their ability to travel to Mexico.

Corral responds Mexico is not an available and adequate alternative forum because the State of Chihuahua no longer recognizes causes of action for defamation, libel, and slander, citing to an article about the decriminalization of the penal claims at the federal level. He argues that even assuming *daño moral* is a similar cause of action to defamation, its two-year statute of limitations would bar his suit, given that the allegedly defamatory articles were published over two years ago.

Because El Diario de El Paso filed a consent to be sued in Mexico, and because the remaining parties are Mexican citizens, we conclude all parties are available in Mexico. *See Yoroshii Invs. (Mauritius) Pte. Ltd. v. BP Intern. Ltd.*, 179 S.W.3d 639, 643 (Tex. App.—El Paso 2005, pet. denied) ("A defendant may also consent to jurisdiction and thus make a forum available."). However, we still must determine whether Mexico provides an adequate alternative

8

forum for Corral's claims.

Both Texas and federal courts have consistently found Mexico to be an adequate alternate forum. *Diaz*, 618 S.W.3d at 806 (collecting cases). Indeed, Mexican substantive law is presumed to be adequate "unless the plaintiff makes some showing to the contrary, or unless conditions in the foreign forum made known to the court, plainly demonstrate that the plaintiff is highly unlikely to obtain basic justice there." *Vinmar*, 336 S.W.3d at 674 (quoting *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 796 (5th Cir. 2007)). In other words, courts presume an adequate alternative forum exists, and once the defendant seeking dismissal establishes its availability, the plaintiff bears the burden of proving the second forum is inadequate. *Yoroshii*, 179 S.W.3d at 643. However, "adequacy or inadequacy of a forum is typically established by expert affidavits, not by Internet websites or other evidence of questionable credibility." *Vinmar*, 336 S.W.3d at 675; *see In re Bridgestone Americas Tire Operations, LLC*, 459 S.W.3d 565, 577 (Tex. 2015) (defendant presented Mexican-law expert to testify that Mexican courts would have jurisdiction over all defendants in its motion to dismiss for forum non conveniens); *In re Pirelli Tire*, 247 S.W.3d at 677 (plaintiff presented expert testimony regarding Mexican substantive law in response to defendants' motion to dismiss for forum non conveniens); *In re Dauajare-Johnson*, No. 14-14-00256-CV, 2014 WL 3401094, at *4–5 (Tex. App.—Houston [14th Dist.] July 10, 2014, orig. proceeding) (mem. op.) (both parties submitted testimony from Mexican-law experts in motion to dismiss for forum non conveniens).

Here, neither side proffered expert testimony as to the adequacy of Mexican courts or Mexican substantive law. At the trial court level, Corral made the same legal arguments and cited to the same article about the decriminalization of defamation, libel, and slander claims as he does

in his brief before us. That article is inapposite, however, because it relates to the criminal charges, rather than civil claims, of defamation, libel, and slander.[9]

Corral also included, as an exhibit to his response to the motion to dismiss, excerpts from the Chihuahua Civil Code concerning claims of *daño moral*. Specifically, the translated excerpt of Article 1801 states:

> By non-pecuniary or moral damage, it is understood to be the harm that a person suffered to his/her emotions, feelings, beliefs, dignity, honor, reputation, private life, physical aspect, and appearance, as well as the image that a person has before the rest of the world. When an illicit act or omission generates the non-pecuniary or moral damage, the responsible party shall be obligated to rectify it by a monetary compensation regardless if material damages were caused by it, both in contractual and non-contractual liability. . . . The amount of the compensation will be determined by the Judge taking into consideration the assaulted rights, the degree of liability, the economic condition of the liable party, and that of the victim, as well as the rest of the circumstances of the case. When the non-pecuniary or moral damages have affected the victim's dignity, honor, reputation, or his/her image before the rest of the world, the Judge shall order at the victim's request and paid by the responsible party, the publishing in the mass media that the victim considers convenient of a summary of the judgment that would appropriately reflect the nature and scope of the judgment. If the damage arises from an act that had been covered by the media, the Judge shall order that these media publish the summary of the judgment with the same relevance as the original coverage.

The translated excerpt of Article 1819 states that the statute of limitations for claims of *daño moral* is "two years from the day in which the damage occurred."

Presuming Corral's portrayal of the Mexican law is correct, the differences in substantive law between a defamation claim in Texas and claim for *daño moral* do not render Mexico an inadequate forum. *See In re Pirelli Tire*, 247 S.W.3d at 678 (finding Mexico an adequate alternative forum when plaintiffs acknowledged Mexican law provided a similar cause of action

---

[9] *Mexico: Decriminalization of Defamation, Libel, and Slander*, Library of Congress (Dec. 20, 2011), https://www.loc.gov/item/global-legal-monitor/2011-12-20/mexico-decriminalization-of-defamation-libel-and-slander/.

to the one asserted in Texas state court). However, an alternative forum is adequate only if "the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Id.* (quoting *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003)). Corral contends his claims accrued over two years ago when the allegedly defamatory articles were published. Therefore, whether Mexico is an adequate alternative forum hinges on whether the two-year statute of limitations for a *daño moral* claim has lapsed notwithstanding the defendants' waiver.

As to the defendants' waivers, the trial court found "El Diario de Juarez, El Diario de El Paso, and Diario Digital did not specify whether their alleged waivers were for limitation defenses available under Chihuahua law or that could be asserted in Chihuahua courts, calling into question whether these are valid and effective waivers." It also found "El Diario de Juarez, El Diario de El Paso, and Diario Digital did not offer any evidence or legal authority regarding whether this alleged waiver or consent is enforceable under Chihuahua laws, whether Chihuahua courts are bound by this alleged waiver or consent, [] whether a Chihuahua court may sua sponte dismiss the case for limitations or lack of jurisdiction[,]" or "whether any discovery and testimony taken in this case would be admissible in a Chihuahua court."

However, we presume Mexican substantive law is adequate "unless the plaintiff makes some showing to the contrary[.]" *Vinmar*, 336 S.W.3d at 674. Given the evidence in the record regarding claims for *daño moral* in a Chihuahuan court and the waivers executed as to limitations by all defendants in the underlying case, we do not conclude Corral has made such a showing to overcome this presumption. The contingency that a Mexican court might not accept the defendants' waiver does not overcome the "basic principles of comity" in recognizing Mexico as

11

an adequate forum. *In re Pirelli Tire*, 247 S.W.3d at 678 (quoting *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 381–82 (5th Cir. 2002)).

Whether Mexico is an adequate forum is a legal question. Because the trial court held Mexico was not an adequate forum, it failed to analyze the law correctly and abused its discretion. Therefore, we conclude Relators have shown Mexico is an adequate alternative forum. *See In re Dauajare-Johnson*, 2014 WL 3401094, at *5.

**B. Private-Interest Factors**

Because Mexico is an available and adequate alternative forum, we next consider whether the trial court abused its discretion in determining the private- and public-interest factors weigh against dismissal.

Relators contend the trial court abused its discretion in determining the private-interest factors weigh against dismissal. The applicable private-interest factors are: (1) the ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; (3) the possibility of viewing the premises, if applicable; (4) the enforceability of a judgment once obtained; and (5) any other practical factors that make trial expeditious and inexpensive. *Vinmar*, 336 S.W.3d at 676 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

The record contains sufficient evidence for the trial court to determine the private-interest factors weighed against dismissal. Though Relators contend many of the relevant documents are in Spanish and the translation of these documents into English presents "formidable hurdles," the trial court found and record evidence supports the fact that much of the documentary evidence in this case requiring translation has already been produced in the underlying case and translated into

English.

Relators also argue the number of Mexican witnesses in this case "is daunting" and contend most of the Mexican witnesses cannot be compelled to attend trial in Texas. Specifically, they maintain at least seven of the journalists who authored the allegedly defamatory articles cannot be compelled to testify in the United States, nor can essential fact witnesses who can testify to the merits of Corral's defamation claims. Record evidence supports Relators' claim that certain witnesses are indeed located in Mexico and would not be subject to compulsory process in the United States. Evidence in the record also demonstrates, however, that some of the non-party witnesses Relators classify as essential witnesses located in Mexico are deceased and thus irrelevant to the analysis. Corral filed sworn declarations of Mexican-resident fact witnesses who have agreed to testify in the Texas proceeding and claims other relevant fact witnesses will do so.[10] Because this case spans the United States-Mexico border, there will be international witnesses whether Corral's claims are brought in Texas or Mexico. Nevertheless, the trial court found for any witnesses not subject to compulsory process in Texas "the parties can take their oral or written deposition pursuant to the Texas Rules of Civil Procedure and applicable international treaties," recognizing that "Mexico is a signatory to several international treaties on judicial assistance, service of judicial documents, taking of evidence, and/or the performance of other procedural acts abroad[.]"Though Relators contend procedure under the Hague Convention is "lengthy, time

---

[10] Though Corral tendered sworn declarations into the trial court record, it was not necessary for El Diario de Juarez and Diario Digital to do so. *See Reyno*, 454 U.S. at 258 (explaining it is not necessary for defendants to "submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum").

consuming, [and] expensive,"[11] in sum, we cannot say the trial court abused its discretion in finding that the private-interest factor regarding the availability of compulsory process favored denying dismissal because the trial court did not act without reference to any guiding rules or principles.

Further, Relators argue the parties' ability to view the premises supports dismissal. This factor may be relevant to Corral's claims because the allegedly defamatory articles concern Corral's property in Mexico, and Relators argue viewing any of the properties would not be possible if the case remains in Texas. The trial court found, however, that they "do not explain or justify under which circumstances a site inspection would be necessary" in the context of Corral's claims and noted "[t]he parties have photos of the properties and the ability to view the properties online[.]" Though it is undisputed that Corral's properties are located in Mexico, Relators presented no evidence on this factor.

Relators also maintain Corral's ability to enforce a judgment once obtained favors dismissal because he would have to do so in Mexico as to two of the three defendants, who are Mexican corporations with all of their assets in Mexico. Corral responds, and the trial court found, if he were to obtain a judgment in Mexico against El Diario de El Paso, he would have the same

---

[11] Again, neither party solicited expert testimony regarding Mexican law. At oral argument, Relators contended our opinion in *Diaz v. Todd*, No. 08-21-00202-CV, 2022 WL 17834927 (Tex. App.—El Paso Dec. 21, 2022, no pet. h.) supports their argument that a Texas court could not compel testimony from unwilling Mexican witnesses, while a Mexican court could compel testimony from unwilling Texas-resident witnesses. However, in *Diaz*, we concluded the record contained testimony from the defendant's Mexican-law expert witness to support the trial court's conclusion that because most of the witnesses are in Mexico, their attendance could not be compelled at trial in El Paso, such that maintaining the case in Texas would result in additional expenses for all parties. *Id.* at *6–7. Here, we have no similar finding of fact at the trial court level nor expert testimony to substantiate it.

Further, *Diaz*, as well as its predecessor case, involved our review of the trial court's dismissal for forum non conveniens. *See id.* at *1; *Diaz v. Todd*, 618 S.W.3d 798, 802 (Tex. App.—El Paso 2020, no pet.). Though the standard of review in both *Diaz* cases and this case is the same—clear abuse of discretion—here, we review the trial court's *denial* of Relators' motion to dismiss for forum non conveniens.

domestication issues in Texas as he would in Mexico if the case remains in El Paso. Though domesticating a foreign judgment against two entities rather than one would appear to weigh in favor of dismissal, there is no "rigid rule" requiring the trial court to conclude each factor weighs against dismissal. *Brenham Oil & Gas, Inc. v. TGS-NOPEC Geophysical Co.*, 472 S.W.3d 744, 769 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *Reyno*, 454 U.S. at 249–50); *see Quixtar*, 315 S.W.3d at 33 (holding it is error for court to require every factor favor dismissal).

Finally, Relators contend choice-of-law issues (addressed as a public-interest factor below), as well as the ongoing need for translators and anticipated disputes about the accuracy of translations are practical factors that would make trial in Mexico expeditious and inexpensive as compared to trial in Texas. However, the trial court found "[i]t would not be burdensome or unusual for the Court to consider the need of Spanish translators for any testifying witnesses," noting the "Court is properly equipped with certified Spanish translators, especially in light of its close proximity to Mexico and the large population of Spanish speakers in El Paso County." The record supports that finding. Indeed, interpreters were present at the hearing on the motion to dismiss, as well as the special appearance hearing. Further, Relators have not pointed to any disputes between the parties regarding the accuracy of translations, so their argument that this is a practical factor supporting dismissal is based on mere speculation—especially considering the underlying case proceeded at the trial court level for nearly two years and involved substantial document production, including documents that required translation. The trial court did not abuse its discretion in determining this factor weighed against dismissal.

## C. Public-Interest Factors

Relators also contend the trial court abused its discretion in determining the public-interest

15

factors weigh against dismissal. The applicable public-interest factors are the: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized controversies decided at home; (3) interest in having the trial of a diversity case in a forum that is consistent with the law governing the action; (4) avoidance of unnecessary problems in conflict of laws or application of foreign law; and (5) unfairness of burdening citizens in an unrelated forum with jury duty. *Vinmar*, 336 S.W.3d at 676 (citing *Gulf Oil*, 330 U.S. at 508–09).

The record contains sufficient evidence for the trial court to determine the public-interest factors weighed against dismissal. As to the El Paso County Court's congestion, Relators contend the "County Court at Law Number 3's docket is full," pointing to the trial court judge's statement at the motion hearing that he had 900 pending cases. However, as the parties recognize in their briefs, a new judge has since been assigned to preside over the underlying suit. Further, there is no evidence in the record comparing the congestion between El Paso County Court at Law Number Three and a Mexican court. Because the record does not include a comparison between the two systems, this factor weighs against dismissal. *See Diaz*, 2022 WL 17834927, at *8 (citing *Tellez v. Madrigal*, 223 F. Supp. 3d 626, 642 (W.D. Tex. 2016)) (concluding the same when the record did not include a comparison between the congestion in the two court systems).

Relators argue there is a local interest in having this controversy decided in Mexico because "[t]he actions all took place in Mexico where the parties rightfully expected that their actions would be governed by Mexican law." However, that ignores Corral's allegations in the underlying case—that the allegedly defamatory articles were circulated and caused injury in El Paso County. Indeed, the trial court found "[t]here is local interest in having this localized controversy decided in this forum" because "[t]he alleged defamatory articles and headlines about Corral were

16

circulated, distributed, and sold in El Paso County[,] and Corral has allegedly suffered harm in this forum." Given the record evidence supporting that finding, we cannot say the trial court abused its discretion in its determination on this factor.

The trial court similarly concluded the third and fourth public-interest factors—involving the interest in having the trial of a diversity case in a forum consistent with the law governing the action and avoidance of unnecessary problems in conflict of laws or application of foreign law—weighed against dismissal. These findings followed the trial court's decision that Texas, not Mexican, law applies to this case. While even the possibility that foreign law applies to a dispute may be sufficient to warrant dismissal on forum non conveniens grounds, here, the trial court decided Mexican law does not apply.[12] *See Vinmar*, 336 S.W.3d at 679 (quoting *Warter v. Boston Secs., S.A.*, 380 F. Supp. 2d 1299, 1315 (S.D. Fla. 2004)). Accordingly, the trial court concluded maintaining the case in Texas will not present any choice-of-law issues, and we give its decision "appropriate deference." *Quixtar*, 315 S.W.3d at 35. Further, the trial court's conclusion as to the fifth public-interest factor—that "[t]he citizens of El Paso County would not be unduly burdened

---

[12] A choice-of-law analysis is a legal question, though we defer to the trial court's findings of facts. *Liberty Mut. Ins. Co. v. Transit Mix Concrete & Materials Co.*, No. 06-12-00117-CV, 2013 WL 3329026, at *4 (Tex. App.— Texarkana June 28, 2013, pet. denied) (mem. op.) (citing *Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008)) (conducting choice-of-law analysis in statutory forum non conveniens case). Though the trial court concluded Texas law applies, it did not provide any detailed choice-of-law analysis, nor did it identify a conflict of law, in the record before us. In a separate order, the trial court summarily denied the defendants' motion to determine choice-of-law and stated, "Texas law should apply in this case." Generally, a court must first identify a conflict of law requiring it to decide a choice-of-law issue. *Vinson v. Am. Bureau of Shipping*, 318 S.W.3d 34, 51 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252, 260 (Tex. App.—San Antonio 1999, pet. denied)). But even if the trial court were to perform a choice-of-law analysis here, we conclude the requisite "most significant relationship" test favors the application of Texas law given the trial court's resolution of disputed fact issues in the underlying case. *See id.* at 51 n.17 (citing RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 145 (1971)); *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979) (describing "most significant relationship" test as considering (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered). Accordingly, the trial court did not abuse its discretion as to the choice-of-law factor.

with serving as jurors in this case"—reasonably follows its conclusion that this case presents a localized issue since "[t]he alleged defamatory articles and headlines about Corral were circulated, distributed, and sold in El Paso County[,] and Corral has allegedly suffered harm in this forum."

In sum, because the trial court considered the relevant private- and public-interest factors and its balance of those factors is reasonable, we give its decision substantial deference. *Id.* at 31. Our role is to determine whether the trial court abused its discretion when weighing private- and public-interest factors, not whether we may have come to a different conclusion than the trial court as to any given factor. *See Yoroshii*, 179 S.W.3d at 642 ("An abuse of discretion does not occur merely because the reviewing court would act differently than the trial court."). We therefore conclude the trial court did not abuse its discretion in balancing the private-and public-interest factors and concluding the balance did not favor dismissal.

### *CONCLUSION*

Relators have not demonstrated the trial court abused its discretion in weighing the private-and public-interest factors. In this case, with a Mexican plaintiff suing both American and Mexican defendants regarding allegedly defamatory articles circulated in the United States concerning Mexican property, there were competing considerations on convenience for the trial court to consider in its forum non conveniens analysis. However, there is nothing in the record mandating a different outcome, and that is the crux of an abuse-of-discretion analysis. *See Celanese Corp. v. Sahagun*, No. 05-19-00402-CV, 2020 WL 2079178, at *6 (Tex. App.—Dallas Apr. 30, 2020, no pet.) (mem. op.) (concluding the same). Accordingly, we conclude the trial court did not abuse its

discretion in weighing the private- or public-interest factors.[13] For the above reasons, we affirm the trial court's order denying the motion to dismiss for forum non conveniens and deny Relators' petition for writ of mandamus.

YVONNE T. RODRIGUEZ, Chief Justice

February 8, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.

---

[13] As explained above, however, the trial court did abuse its discretion when it found Mexico is not an available and adequate alternative forum.